IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD GUIDAS,<br><br>    *Plaintiff,*<br><br>    v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>    *Defendant.* | Civil Action No. 2:24-cv-305<br><br>Hon. William S. Stickman IV |
| CHASE SHAFFER,<br><br>    *Plaintiff,*<br><br>    v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>    *Defendant.* | Civil Action No. 2:24-cv-969 |
| JAMES NADALIN,<br><br>    *Plaintiff,*<br><br>    v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>    *Defendant.* | Civil Action No. 2:24-cv-1174 |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

### I.    INTRODUCTION

The three related cases captioned above involve putative class actions asserted by

Plaintiffs Ronald Guidas ("Guidas"), Chase Shaffer ("Shaffer"), James Nadalin ("Nadalin")

1

(collectively, "Plaintiffs") alleging that Defendant United States Steel Corporation ("U.S. Steel") violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101 *et seq.*, by failing to pay overtime wages to hourly employees for activities they performed before their scheduled start time and after their scheduled end time. The three cases assert claims that U.S. Steel violated the PMWA in all three plants that comprise its Mon Valley Works – Clairton (Guidas), Irvin (Shaffer), and Edgar Thomson (Nadalin).

The cases were filed in the Court of Common Pleas of Allegheny County, Pennsylvania. U.S. Steel removed all three cases to this Court, arguing that the PMWA claims are preempted under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. The cases were assigned to three different members of this court—the undersigned, Judge William S. Stickman IV (Guidas), Chief District Judge Cathy Bissoon (Shaffer), and Judge Mark R. Hornak (Nadalin). The respective Plaintiffs each moved to remand, arguing that their claims sounded solely under state law, did not require the interpretation of any collective bargaining agreement, and were not, therefore, preempted by the LMRA. The Court incorporates by reference the opinions issued in the three cases explaining the respective judges' analysis of the preemption issue and determining that the respective plaintiff's action was not preempted. (Civil Action No. 2:24-cv-305 (Guidas), ECF No. 18); (Civil Action No. 2:24-cv-969 (Shaffer), ECF No. 30); (Civil Action No. 2:24-cv-1174 (Nadalin), ECF No. 28).

After careful consideration of the parties' arguments on the preemption issue, all three assigned judges granted the respective plaintiff's motion for remand and remanded the case to the Court of Common Pleas of Allegheny County. There, the cases were consolidated for discovery. U.S. Steel argues that in the course of discovery, it "discovered that, in February 2021, hourly employees at its Clairton plant filed a grievance asserting they were entitled to

2

compensation for the activities upon which Plaintiff bases his suit, and the grievance commission determined that such compensation was not owed to the grieving hourly employees under the terms of the BLA." (Guidas; ECF No. 21, p. 2); (Shaffer; ECF No. 31, p. 2); (Nadalin; ECF No. 30, p. 2). Based on this alleged discovery, U.S. Steel again removed all three cases, arguing that the existence of the 2021 grievance shows the overlap of issues between Plaintiffs' claims under the PMWA and the provisions of the Basic Labor Agreement ("BLA"), which formed the basis of the 2021 grievance. Because of the similarity of the claims and the jurisdictional issues presented, all three cases were designated as related and consolidated for decision before the undersigned.

Plaintiffs ask the Court to again remand these actions to state court. They first contend that U.S. Steel's re-removals of these cases violate the removal statute and are, therefore, procedurally untenable. On the substance, Plaintiffs argue that the 2021 grievance does not change the analysis that formed the basis of the prior remands—that nothing in the 2021 grievance requires the Court to consider and interpret the terms of the BLA. Instead, they argue, their claims stand or fall on the provisions of the PMWA and the PMWA alone.

The Court has carefully reviewed the assertions in U.S. Steel's second notices of removal, as well as its arguments in opposition to plaintiffs' motions to remand. As explained below, the Court holds that U.S. Steel's re-removals of these cases are based on the same legal grounds as its first removals. The fact that U.S. Steel can point to the grievance as additional evidence in support of its preemption theory does not constitute different grounds for removal. The re-removals are impermissible under 28 U.S.C. § 1447(d).

## II.   ANALYSIS

Plaintiffs argue that "Defendant's second removal of these cases asserting federal subject matter jurisdiction is impermissible under 28 U.S.C. § 1447(d)."  (Guidas, ECF No. 27, p. 11); (Shaffer, ECF No, 37, p. 11); (Nadalin, ECF No. 39, p. 11).  The main thrust of their argument is that U.S. Steel does not get a second bite of the same jurisdictional apple—having previously raised the issue of LMRA preemption without success, it cannot do so again, even in light of its discovery of the 2021 grievance.  Plaintiffs also take aim at the re-removal through the lens of Section 1446(b)(3), which governs the timeframe for removal.  (*Id*. at 12).  The Court will first address whether the second removals were timely.  It will then address whether these are impermissible re-removals barred by Section 1447(d).

### A.   U.S. Steel's removal was timely

Plaintiffs argue that the second removals were untimely because U.S. Steel did not, as its notice of removals state, first discover that the cases were potentially removable based on the LMRA in December 2025, but rather, "[i]t first came to this conclusion in 2024 when it originally removed these cases to this court." (Guidas, ECF No. 27, p. 12); (Shaffer, ECF No. 37, p. 12); (Nadalin, ECF No. 39, p. 12).  While Plaintiffs' arguments concerning the timeliness of the removals are not well-developed and are largely subsumed into its contentions that the re-removals were impermissible under Section 1447(d), whether U.S. Steel's removals were timely under Section 1446(b) is an important threshold issue.

Section 1446 states, in relevant part:

(b) REQUIREMENTS; GENERALLY.—

(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons

upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

\*             \*             \*

**(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(1), (3). In this case, U.S. Steel cites to subsection (b)(3) as the basis of its removal. This is the only feasible ground for revocation at this stage. The question is, what event started the removal clock? U.S. Steel contends, in each of its notices of removal, that it removed "within thirty (30) days of receipt of documentary evidence that makes this case removable." (Guidas, ECF No. 21, p. 3); (Shaffer, ECF No. 31, p. 3); (Nadalin, ECF No. 30, p. 3). Subsection (b)(3) contemplates that removal may be effectuated within thirty days of the receipt of "an amended pleading, motion, order or other paper." 28 U.S.C. § 1446(b)(3). U.S. Steel based its removals on its discovery of the 2021 grievance. U.S. Steel contends that its discovery of the grievance was the triggering event and that its removals thereafter were timely.

U.S. Steel's notices of removal and responses in opposition to Plaintiffs' motions for remand ((Guidas, ECF No. 28); (Shaffer, ECF No. 38); (Nadalin, ECF No. 40)) assert that U.S. Steel discovered the 2021 grievance in the course of discovery: "Since Defendant USS filed its Answer, the parties have been engaging in discovery. In the course of discovery, Defendant USS discovered that, in February 2021, hourly employees at its Clairton plant filed a grievance…." (Guidas, ECF No. 21, p. 2); (Shaffer, ECF No. 31, p. 2); (Nadalin, ECF No. 30, p. 2). To be clear, U.S. Steel never claims that it received the 2021 grievance from Plaintiffs in the course of discovery, but rather, that it had the document in its own files. (Guidas, ECF No. 28, p. 4); (Shaffer, ECF No. 38, p. 4); (Nadalin, ECF No. 40, p. 4). It contends, however, that this does not

matter, because pursuant to the United States Court of Appeals for the Third Circuit's decision in *McLaren v. UPS Store Inc.*, 32 F.4th 232, 238 (3d Cir. 2022), a party is not required to search its own files to discover facts that might give rise to removal. (Guidas, ECF No. 28, p. 4); (Shaffer, ECF No. 38, p. 4); (Nadalin, ECF No. 40, p. 4).

In *McLaren*, the plaintiffs filed putative class actions against a UPS Store in New Jersey state court, alleging that it charged more than New Jersey law allowed for notary services. The state court denied UPS's motion to dismiss, and the case proceeded both to an interlocutory appeal and discovery. *McLaren*, 32 F.4th at 235. In the course of discovery, UPS responded to McLaren's discovery requests with a spreadsheet disclosing the number of notary transactions within the class period. This spreadsheet demonstrated that the amount in controversy exceeded the jurisdictional limit under the Class Action Fairness Act ("CAFA"). *Id.* Thereafter, UPS removed on the basis of Section 1446(b). *Id.* The plaintiffs moved to remand, which the district court granted—holding that the removal was untimely. *Id.* On appeal, the plaintiffs argued that remand was proper because the removal was untimely. They asserted that "Defendants possessed information concerning the number of notary services they provided, and that such information would have informed them that the amount in controversy for CAFA jurisdiction was satisfied. Because Defendants had such information when they were served with the complaints, Plaintiffs argue that Defendants were required to remove these cases within thirty days of the date they received the initial pleading." *Id.* at p. 237–38.

The Third Circuit held that the removal was not untimely because "the text of § 1446(b) requires that courts focus on what a defendant receives, and not on what knowledge it possesses. Thus, whether removal is timely under Section 1446(b) depends on whether a document the defendant receives informs the reader, to a substantial degree or specificity, that all the elements

6

of federal jurisdiction are present." *Id.* at 238 (cleaned up) (internal citations omitted). It further explained:

> The text of § 1446(b) shows that the only documents that trigger either thirty-day clock are those documents "recei[ved] by the defendant." 28 U.S.C. § 1446(b)(1), (3). Subsection (b)(1) requires removal "within thirty days after the receipt by the defendant ... of a copy of the initial pleading," and (b)(3) permits removal "within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper" from which federal jurisdiction can be ascertained. 28 U.S.C. § 1446(b)(1), (3). The plain language of the statute focuses only on what a defendant receives. Thus, the statute does not contemplate that the thirty-day clock would be triggered by information that the defendant already possesses or knows from its own records.

*Id.* Thus, the Third Circuit concluded:

> Section 1446(b)'s use of the phrase "receipt by the defendant" also prohibits courts from imposing a duty on defendants to investigate the records they possess. Although a defendant has a duty to "apply a reasonable amount of intelligence to its reading" of the documents it receives, it has no duty "to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability.'" *Gibson v. Clean Harbors Env't Servs., Inc.*, 840 F.3d 515, 519 (8th Cir. 2016) (quoting *Graiser v. Visionworks of Am.*, 819 F.3d 277, 285 (6th Cir. 2016)); *Romulus* [*v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014)] ("The defendant has no duty ... to investigate or to supply facts outside of those provided by the plaintiff."); *Mumfrey* [*v. CVS Pharmacy Inc.*, 719 F.3d 392, 399 (5th Cir. 2013)] (declining to adopt a rule that would "expect defendants to 'ascertain[] from the circumstance[s] and the initial pleading'" that damages exceeded the amount-in-controversy requirement) (quoting *Chapman* [*v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)] (alterations in original)); *cf. Kuxhausen* [*v. BMW Fin. Serv. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013)] ("Multiplying figures clearly stated in a complaint is an aspect of [reasonable intelligence]."). Thus, the text and the weight of authority demonstrate that a defendant must apply ordinary intelligence in reading the documents it receives, but it need not search its own records to determine whether federal jurisdiction exists.

*Id.* at 239–40. Because the spreadsheet in UPS's possession was not "received by a defendant," it did not trigger the thirty-day clock. *Id.* at 241. The Third Circuit held, "no thirty-day removal clock started. As a result, Defendants' removals were timely." *Id.*

7

Plaintiffs' position—that U.S. Steel's removals are untimely because it knew about (or should have known about) the 2021 grievance from the onset of this litigation—is untenable in light of the Third Circuit's decision that the thirty-day clock will only be triggered by documents that a party receives, rather than information that it knows. Plaintiffs' argument that U.S. Steel's removals were untimely because it could be imputed with knowledge of the 2021 grievance long before the second removals must fail. U.S. Steel's position is also untenable in light of *McLaren*.[1] Because U.S. Steel's possession of information about the 2021 grievance did not trigger the 30-day removal period under Section 1446(b), removal was not untimely.

**B.    U.S. Steel's removal was barred by Section 1447(d)**

Even though U.S. Steel's notices of removal are not untimely under Section 1446(b), that does not end the inquiry as to whether they are removable. The main thrust of Plaintiffs' argument is that the second removals are barred by Section 1447(d), which provides:

> (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d). The "or otherwise" language in the statute has been interpreted not only as barring an appeal from a remand order, but also a district court's reconsideration of such an order. *C.S. ex rel. Surman v. Target Corp.*, Civil Action No. 11–244, 2011 WL 915957 at *4 (W.D. Pa. Mar. 16, 2011). While the Third Circuit has held that Section 1447(d) is not an

---

[1] U.S. Steel averred that it removed within thirty days of its discovery of the 2021 grievance. It did not have to under the rationale of *McLaren*. Under the Third Circuit's holding, only the receipt of a document from another party triggers the thirty-day clock. Under the Third Circuit's view, absent the receipt of an "amended pleading, motion, order or other paper" from another party, there is no triggering event and, thus, no outer limit on the time for a party to remove based on knowledge that it possesses. *See McLaren*, 32 F. 4th at 240 (recognizing concerns about the implications of the Court's holding, yet explaining that it was compelled by the statutory language).

8

absolute bar to re-removal, a second removal must be "based on grounds different than the first removal." *Doe v. Am. Red Cross*, 14 F.3d 196, 200 (3d Cir. 1993); *see also Guddeck v. SmithKline Beecham Corp.,* 957 F. Supp. 2d 622, 624 (E.D. Pa. 2013) ("The *Doe* opinion does require that a second notice of removal must be based on different grounds than the first in order for a second removal to be proper.").

The requirement that re-removal must be based on "different grounds" than the first removal requires more than the discovery of additional *evidence* to support the same *theory* relied upon in the first removal. Federal courts must, therefore, remand where a re-removal does not offer a new theory of removal, but where the same arguments are "simply repackaged to include additional factual evidence." *Surman*, 2011 WL 915957, at *4.

In *Surman*, a district court remanded after Defendant Target Corporation tried to remove a personal injury action to federal court for the third time—each time alleging that the plaintiffs had fraudulently joined a same-state defendant to defeat diversity jurisdiction. The Honorable Nora Barry Fischer explained that the re-removal was not based on a different legal theory: "Target took discovery in state court in an attempt to develop a record supporting its earlier claim of fraudulent joinder and then filed another notice of removal based on the same theory but relying on a larger factual record." *Id.* The re-removal, as quoted above, simply "repackaged" the previously-rejected theory of removal with additional evidence from a broader factual record. The district court remanded the action to state court.

The decision of the United States District Court for the Southern District of Alabama in *Nicholson v. National Accounts, Inc.*, 106 F. Supp. 2d 1269 (S.D. Ala. 2000) is also instructive. There, the plaintiff asserted various state law claims against the defendants. Defendants Blue Cross and Blue Shield of Alabama and Blue Cross and Blue Shield of New Jersey, Inc.

(collectively, "Blue Cross") removed the action, arguing that the plaintiff's claims were completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1002 *et seq.* ("ERISA"). The plaintiff moved to remand, which was granted by the district court, holding that the plaintiff's claims were not preempted because the plaintiff did not have standing to assert a claim under ERISA. *Nicholson*, 106 F. Supp. 2d at 1270. After taking discovery in state court, Blue Cross again removed, claiming once more, complete preemption:

> Almost seven months later, Blue Cross again removed this case to federal court. The sole basis for removal is, as before, that Nicholson's state law claims are completely preempted by ERISA. Thus, Blue Cross does not assert a new basis for removal; rather, it argues that Nicholson's recent deposition testimony demonstrates that the court was incorrect in previously holding that Nicholson was not a plan 'participant' or plan 'beneficiary' with standing to sue under ERISA.

*Id.* at 1271. The district court first recognized that Blue Cross removed the second time under Section 1446(b), claiming that the plaintiff's deposition testimony was an "other paper" which triggered the ability to remove. Because the plaintiff's deposition did not exist at the time of the previous removal, Blue Cross contended that "this evidence constitutes different grounds for removal, thereby permitting a second notice of removal pursuant to the second paragraph of section 1446(b)." *Id.* The district court rejected this contention:

> However, the second paragraph of section 1446(b) must be read in harmony with 28 U.S.C. § 1447(d), which provides that a remand order 'is not reviewable on appeal or otherwise.' Section 1447(d) not only forecloses appellate review, but also bars reconsideration by the district court of its own remand order. Thus, while a defendant may re-remove a case pursuant to section 1446(b), where, for example, the plaintiff amends her non-diverse state law complaint after remand to add a federal cause of action, *the defendant may not circumvent section 1447(d)'s prohibition on reconsideration by filing a second notice of removal which simply supplies evidentiary support for the argument that the previous remand order was incorrect.*

*Id.* at 1271 (emphasis added). The district court concluded that the second removal, based only on additional evidence garnered in discovery, was "nothing more than a creative attempt to have the court reconsider its prior remand order." *Id.* at 1272.[2]

In this case, U.S. Steel's re-removals are impermissible under Section 1447(d). A review of its first and second notices of removal demonstrates that the second removals are not "based on grounds different than the first removal[s]." *Doe*, 14 F.3d at 200. Both sets of removals are based on the legal theory that Plaintiffs' respective actions are completely preempted under the LMRA because their actions will require the Court to examine the terms of the BLA. The only difference between the two remands is not one of theory, but of evidence to support the theory—i.e., U.S. Steel now claims that its discovery of the 2021 grievance supports its preemption theory. *See* (Guidas, ECF No. 21, pp. 2-3); (Shaffer, ECF No. 31, pp. 2-3); (Nadalin, ECF No. 30, pp. 2-3) ("Because the Court did not have the opportunity to review the information in this grievance, Defendant USS files this removal to allow the Court to consider the preemptive effect of this grievance on Plaintiff's claim.").

The discovery of allegedly new evidence is a prototypical basis for a motion for reconsideration—which is barred under Section 1447(d). U.S. Steel has "simply repackaged

---

[2] The holdings of the courts in *Nicholson* and *Surman* are representative of the consensus amongst federal courts that Section 1447(d) bars re-removal on the same theory as a prior removal, even where there may be new evidence in support of that theory. *See e.g., Fouad v. Milton Hershey Sch. & Sch. Trust*, 523 F. Supp. 3d 648 (S.D.N.Y. 2021) (collecting cases); *see also Bank of Am. v. Pastorelli-Cuseoi,* No. 3:17-cv-01666, 2017 WL 4678184 (D. Conn. Oct. 17, 2017) (examining rule barring re-removal on same grounds in light of the law of the case doctrine). Indeed, as early as 1883—before the adoption of the current removal statute—the Supreme Court of the United States recognized the general principal barring re-removal on the same grounds as a previous removal. *St. Paul & C.R. Co. v. McLean*, 108 U.S. 212, 217 (1883) ("When the circuit court first remanded the cause, the order to that effect not being superseded, the state court was reinvested with jurisdiction, which could not be defeated by another removal upon the same grounds, and by the same party. A different construction of the statute, it can be readily seen, might work injurious delays in the preparation and trial of causes.").

[its same, previously rejected, basis for removal] to include additional factual evidence." *Surman*, 2011 WL 915957, at \*4. As the district court in *Nicholson* explained in rejecting a second removal based on a previously-rejected preemption argument, U.S. Steel "may not circumvent Section 1447(d)'s prohibition on reconsideration by filing a second notice of removal which simply supplies evidentiary support for the argument that the previous remand order was incorrect." *Nicholson*, 106 F. Supp. 2d at 1271. That is exactly what U.S. Steel has done here. There is no difference in the grounds alleged for removal—only on the evidence that U.S. Steel presents in support of those grounds. This is an impermissible basis for its re-removals.

Finally, the Court notes that the 2021 grievance was not hidden from U.S. Steel in the course of proceedings on its previous removals. While, under *McLaren*, the Court may not consider material in U.S. Steel's records as a basis of determining that re-removal was untimely, the Court holds that the fact that U.S. Steel had records of the grievance in its own papers is relevant to the question of whether the re-removals are impermissible. While the second notices of removal state that "the Court did not have an opportunity to review the information in this grievance," U.S. Steel cannot point to any extrinsic bar that would have precluded it from presenting the grievance to the Court as evidence in support of its preemption argument in the first remand proceedings. U.S. Steel was a participant in the 2021 grievance. U.S. Steel maintained the records of the grievance, including minutes of the Step 2 grievance meeting on its own stationery. (Guidas, ECF No. 28, p. 6); (Shaffer, ECF No. 38, p. 6); (Nadalin, ECF No. 40, p. 6). If the Court did not have the opportunity to consider the grievance in the initial proceedings, it is because of U.S. Steel and U.S. Steel alone. There has been no change in U.S. Steel's circumstances. It has not acquired any new evidence. It has only come to a deeper

understanding of the evidence it always had.  Even if U.S. Steel's re-removals were asserted as a traditional motion for reconsideration, the Court would deny it because the evidence "discovered" by U.S. Steel was not actually new, but was available at the time of the initial removals and remand proceedings.

It is well-established that a defendant may not re-remove an action on the same grounds as a previously rejected removal, which is what U.S. Steel has done here.  It has re-removed on a reassertion of the same legal theory—complete preemption—that three judges of this court have previously rejected.  The latest removals purport to offer new evidence, not new legal grounds.  U.S. Steel's previously rejected assertions of federal jurisdiction are "simply repackaged to include additional factual evidence." *Surman*, 2011 WL 915957, at *4.  The re-removals run afoul of Section 1447(d).  The Court will, once again, remand these actions to state court.[3]

### C.    Attorney Fees and Costs are recoverable under Section 1447(c).

Plaintiffs ask for the award of attorney fees and costs under Section 1447(c).  The statute provides, in relevant part, that: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  As the Supreme Court has recognized, the statutory language uses the term "may," rather than "shall" or "should." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). This indicates that the remanding court has discretion over whether a fee award is warranted. The Supreme Court explained that "the standard for awarding fees should turn on the

---

[3] Because the Court holds that U.S. Steel's re-removals of these actions are barred by Section 1447(d), any examination of the merits of its arguments in support of the removals would be mere dicta.  Nevertheless, were the Court to examine in-depth the merits of U.S. Steel's arguments, it would come to the same conclusion that it, Chief Judge Bissoon, and Judge Hornak previously reached.  The Court does not believe that the existence of the 2021 grievance changes the analysis of whether Plaintiffs' PMWA claims are preempted by the LMRA.

reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*

An attorney fee award is warranted in these cases. In light of the discussion above, the Court holds that U.S. Steel lacked an objectively reasonable basis for its second removals. The law under Section 1447(d) is clear that a subsequent removal is not appropriate to merely repackage theories already rejected by the federal court. Re-removal cannot be used to present the Court with a more fulsome evidentiary record to support already rejected grounds for removal. A re-removal is certainly not an appropriate vehicle to present what is, in its essence, a request to reconsider a prior decision. U.S. Steel's second removals were based on a legal theory identical to the first removals. The only difference is that it pointed to the 2021 grievance as additional evidence in support of its theory. As explained above, information about the grievance was always in U.S. Steel's possession. There was nothing new that precipitated the second removals. Based on the totality of the circumstances of these cases, U.S. Steel lacked an objectively reasonable basis for its second removals. Plaintiffs may submit a fee petition seeking reasonable attorney fees expended relative to their remand motions.

14

15

### III.    CONCLUSION

For the reasons set forth above, the Court holds that U.S. Steel's re-removal of these actions is improper under 28 U.S.C. §1447(d).  Plaintiffs' motions will be granted, and orders remanding these actions to state court will follow.  Plaintiffs may file their fee petitions on or before August 10, 2026.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_7/8/26_
Dated

15